**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000435
29-NOV-2019
07:56 AM**

NO. CAAP-18-0000435

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


BV, Plaintiff-Appellee, Cross-Appellant, v.
TV, Defendant-Appellant, Cross-Appellee


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 16-1-097K)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)


Defendant-Appellant/Cross-Appellee TV (**Husband**),
appeals from the May 15, 2018 Divorce Decree (**Decree**) entered in
the Family Court of the Third Circuit (**Family Court**). Plaintiff-
Appellee/Cross-Appellant BV (**Wife**) cross-appeals from the Decree.
Wife also challenges the Family Court's December 26, 2017 Order
on Divorce Trial Held On July 27 and 28, 2017 (**Trial Order**),
February 8, 2018 Order Granting in Part and Denying in Part
Defendant's Motion for Reconsideration of [Trial Order]
(**Reconsideration Order**), and May 15, 2018 Stipulated Order
Correcting Mathematical Errors (**Order Correcting Math**).[1]

---

[1]     The Honorable Aley K. Auna, Jr., presided over the trial. The
Honorable Peter Bresciani considered and decided the Reconsideration Order
(continued...)

Husband raises three points of error on appeal, contending that the Family Court:  (1) erred in its determination of the equalization payment because the court's calculation was based in part on items that were erroneously included in the Property Division Chart (**PDC**), versions of which were attached to the Trial Order and the Decree; (2) erred in the Decree by failing to consider Husband's argument that Wife's liquidation of her investment accounts during divorce constituted waste; and (3) abused its discretion by awarding Wife attorney's fees.

Wife raises seven points of error on cross-appeal, contending that the Family Court:  (1) erred in failing to identify whether any valid and relevant considerations (**VARCs**) justified deviation from an equal property distribution, then failing to decide whether or not there would be a deviation, and then failing to state the basis for that decision, or otherwise address Wife's request for an equitable deviation; (2) erred and abused its discretion in finding that Wife had wasted assets and failing to find that Husband had wasted assets; (3) erred and abused its discretion by failing to find that an eighteen-carat diamond ring (**Diamond Ring**) was a gift from Husband to Wife and by including it in the PDC as marital property awarded to Wife; (4) erred and abused its discretion in determining Husband's income; (5) erred and abused its discretion in the amount and duration of spousal support; (6) erred by its failure to include certain credit card debt in the PDC; and (7) erred and abused its

(...continued)
following Judge Auna's retirement.  The Decree and the Order Correcting Math were entered by the Honorable Charles H. Hite "for" Judge Auna.

discretion by attributing to Husband and equalizing a $100,000.00 debt to Husband's mother.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the parties' points of error as follows:

Husband's Appeal

(1) Husband contends that the Family Court erred by including non-marital property in its property division calculations, thereby deviating from the partnership model without, *inter alia*, making specific findings of VARCs justifying deviation. Husband specifically points to a business checking account for Global Immunotherapy, LLC (**Global Immunotherapy**) at Bank of America (**BoA Business Account**), a personal Bank of America checking account on which Husband was a joint owner (**BoA Personal Account**), and a personal account at Alaska USA Federal Credit Union (**AFCU Account**).

Prior to Wife's filing of the divorce complaint, which was filed on April 22, 2016, Husband traveled between Hawai'i and Alaska, where he worked as a physician at his medical practice, Mat-Su Integrative Medicine (**MSIM**), which had provided the parties with a lucrative income. At the end of 2015, Husband and Wife mutually decided to purchase and renovate an office building in Alaska, which led to a severe impact on the parties' cash flow and a reduced standard of living. Due to reduced insurance reimbursements, and the loss of clients and personnel, as well as

the mistaken real estate investment, Husband decided to close his Alaska practice.

At the time of trial, Husband was an employee of Global Immunotherapy. Global Immunotherapy was wholly-owned by Husband's fiancé (**Fiancé**). Fiancé, who has an MBA in marketing, testified that she set up the firm for Husband to work at after he fully transitioned to Hawai'i. Fiancé testified that she is the sole member of the LLC because Husband had "financial issues" and they wanted to make sure they could support their children, but that "for the purposes of court" she and Husband fully intended to attribute 50% of the business to him, as the physician, and 50% to her. She stated that she used $4,044 of her own (and her daughter's) funds to set up the business, she created the website, did all accounting, payroll, billing, collections, she brought in new "providers," redid various cost analyses, did the social media and marketing, and otherwise ran the business. Husband was paid as a consultant/contract employee to Global Immunotherapy and saw all of his patients through internet platforms. There was no other physician associated with the LLC. Husband testified that roughly 80 to 85 percent of Global Immunotherapy's income came into the firm as a result of his efforts. However, there is no substantial evidence as to any other source for the other 15 to 20 percent of the income of Global Immunotherapy, which was created as a vehicle for Husband's specialized medical services. Husband also testified regarding the financial risk stemming from the debt associated with the Alaska building, which he stated as the reason for the

4

structuring of Global Immunotherapy. Husband was not an owner or signatory on the BoA Business Account.

Husband acknowledges that the BoA Business Account was not actually awarded to him in the divorce, but argues that it should not have been included in the calculation of the parties' assets as any form of marital property because it was owned entirely by a third person who was not a party in the case. In addition, Husband argues that, even if the account was attributable to him, the court's value of the account was wrong.

On the record in this case, we conclude that the Family Court did not clearly err in allocating 100% of the BoA Business Account as part of Husband's marital property because, based on the testimony presented and reasonable inferences therefrom, there is substantial evidence that his practice of medicine was the sole source of Global Immunotherapy's income, notwithstanding Fiancé's administrative assistance. See, e.g., Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (stating the applicable standard of review).

Husband further argues that the evidence showed that the balance in the BoA Business Account was substantially lower than the $81,398.00 amount stated in the PDC. Husband's trial exhibits received into evidence included an account activity statement for the BoA Business Account, showing an available balance of $17,880.42, based on transactions that were "processing," which included an "ACH HOLD IRS USATAXPYMT ON 7/17[/2017]" for $60,000, which was ten days before trial. Fiancé testified that she paid $60,000 to the IRS on behalf of

the LLC. Husband testified that "I don't do any bookkeeping," but in response to questions about whether there was a $60,000 tax obligation, he said that it was "for the total income of the business [and] will account for my - my income taxes and - and - and [Fiancé's]." He described the payment as a "set aside" for taxes for the first six months of 2017. The same exhibit showed an account balance of $81,397.83, as of July 1, 2017.

Wife argued below and argues on appeal that there was no evidence that there were taxes owing in the amount of $60,000 and that the account was drained to deny Wife her share of marital property.

On the record in this case, we conclude that the Family Court did not clearly err in using the July 1, 2017 account balance to value the account at $81,398.00, rather than a later "available balance" reflecting pending payments, including the $60,000 payment to the IRS, because there is substantial evidence that the pre-trial payment was in the nature of "pre-payment" and not a payment that was due.

Husband and Fiancé jointly owned the BoA Personal Account. Husband argues that the Family Court erred in including 100% of the value of the account, $8,034, to him on the PDC. The record on appeal contains evidence that, *inter alia*, Fiancé was residing in the marital residence with Husband at the time of trial (they intended to get married after Husband's divorce from Wife was complete), Fiancé and Husband both derived their income from Global Immunotherapy, the business was titled in Fiancé's name because of Husband's "financial issues" and, Husband was the

source of Global Immunotherapy's income, and thus the source of Fiancé and Husband's income. Moreover, there is no evidence, other than the statement showing that the account was jointly held, to overcome the presumption that Husband held an interest in the entire joint account. See Traders Travel Int'l, Inc. v. Howser, 69 Haw. 609, 615-16, 753 P.2d 244, 247-48 (1988) (adopting majority view that a debtor presumptively holds the entire bank account, subject to disproving and establishing actual equitable interest). We conclude that substantial evidence in the record supports the Family Court's determination that the account was attributable to Husband.

Husband also argues that the Family Court erred in including a $1,100 value for the balance of the AFCU Account because evidence in the record showed the AFCU Account was closed with a $0.00 balance, referencing his July 17, 2017 Asset and Debt Statement. It appears that the Family Court instead relied on an account statement admitted into evidence by Husband, which showed a balance of $1,098.34. Husband points to no testimony or exhibits to the contrary. Substantial evidence in the record supports the Family Court's determination that the value of the AFCU account was $1,100.

For these reasons, we reject Husband's first point of error.

(2) Husband contends that the Family Court erred by failing to consider his claim that Wife's liquidation of her investment accounts during the divorce constituted waste,

pointing to a series of withdrawals from Wife's accounts.  We recognize that:

> A family court may charge a divorcing party for wasted marital assets when, during the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction.

Gordon v. Gordon, 135 Hawai'i 340, 352, 350 P.3d 1008, 1020 (2015) (citation and quotation marks omitted).  "[I]n the case of marital waste, the wasted assets are treated as a part of the marital partnership property that has already been awarded to the spouse responsible for the waste."  Id.

Although the Family Court did not separately address the wasting of Wife's investment accounts, the Trial Order does include multiple findings of fact (**FOFs**) related to her wasting of assets.  In FOF 27, in addition to incorporating earlier findings, the Family Court found that Wife "has continued to unreasonably spend down her investments and assets."  FOFs 59 through 63 included, inter alia:  Wife "has not been prudent in her spending of her finances . . . [s]uch action is deemed wasting"; "[t]he Court may charge a party who wasted funds during a pending divorce, or who was fiscally irresponsible"; and findings regarding Wife's purchase of a Mercedes Benz with money Husband gave her to assist with living expenses, as well as leasing a BMW for two years because the Mercedes was not available for two months.  The Family Court found and concluded that such action is considered wasting and fiscally irresponsible and charged Wife $55,000 for wasting.  Reference to Wife's wasting of assets are found in the Decree.  The amount attributed

8

to Wife for wasting, $55,000, is equal to the amount of money that Wife paid for the Mercedes Benz. However, as wife was also allocated $34,000 on the PDC for the value of the vehicle itself, it appears that the court considered all of Wife's excessive spending and fiscally irresponsible actions in determining the amount to charge as waste. Taking all of the Family Court's orders and findings into consideration, we cannot conclude that the Family Court disregarded or failed to sufficiently weigh Husband's argument that the court should have charged Wife a higher amount for wasting of additional assets.

(3) Husband argues that the Family Court's award of $5,000 in attorney's fees to wife was an abuse of discretion and "simply wrong" in light of the court's findings regarding Wife's unreasonable spending, wasting of assets, ability to work, and lack of credibility, as well as Husband's expenses exceeding income, financial assistance to Wife, and shouldering of burdens related to what appear to be financially burdensome assets. It is clear from the Family Court's findings, as well as the entire record, that the court also considered the financial ability of income of the parties, the litigious nature of the proceedings, and other equitable factors in determining its award of $5,000 for attorney's fees. The Hawai'i Supreme Court has explained that "an award of attorney's fees is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable." Farias v. Farias, 58 Haw. 227, 233, 566 P.2d 1104, 1109 (1977) (citations omitted); see also HRS § 580-47(f) (2018). Upon review of the record in this case, we cannot conclude that

the Family Court abused its discretion in awarding $5,000 in attorney's fees to Wife.

Wife's Cross-Appeal

(1) Wife contends, and Husband agrees, that the Family Court erred by failing to make findings as to whether VARCs exist justifying deviation from the partnership model.

There are four steps that must be followed by a family court to establish the value of marital property and then distribute it. First, the court must find all facts necessary to properly categorize the property into one of five categories and assign the property the relevant net market value(s). Gordon, 135 Hawai'i at 349-50, 350 P.3d at 1017-18. Second, the family court must identify any VARCs justifying deviation from an equal distribution between the parties. Id. at 350, 350 P.3d at 1018. Third, the court must decide whether there will be a deviation. Id. Fourth, the family court must decide the extent of any deviation. Id.

To determine whether equitable considerations justify a deviation from the partnership model, a family court must consider "the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." Id. at 352-53, 350 P.3d at 1020-21 (quoting HRS § 580-47(a)); see also Hamilton v. Hamilton, 138 Hawai'i 185, 206, 378 P.3d 901, 922 (2016).

Here, the Family Court made no findings identifying any VARCs that may, or may not, have justified deviation from an equal distribution between the parties. Although the record includes some FOFs in the Trial Order that could constitute VARCs in a deviation analysis – such as the length of the marriage or the parties' future earning prospects – the Family Court nevertheless failed to apply any VARCs in an analysis and conclusion of whether a deviation was appropriate.

We conclude that the Family Court clearly erred and abused its discretion in dividing the marital property without first determining whether VARCs warranted a deviation from the partnership model. See Hamilton, 138 Hawai'i at 205, 378 P.3d at 921 (instructing that, on remand, "the family court must first address whether any equitable considerations justifying deviation from an equal distribution exist, then address whether or not there will be a deviation, then decide the extent of any deviation").

(2) Wife contends that the Family Court erred and abused its discretion in determining that she had wasted assets and in failing to determine that Husband wasted assets.

Wife points to Trial Order FOF 63 and submits that it is clearly wrong because the $55,000 Mercedes Benz was not "brand new" and the Family Court failed to explain how purchasing the Mercedes and leasing the BMW reduced the marital estate and to what extent. While it appears from the evidence that the Mercedes Benz was not "brand new," minor errors in a court's findings that are harmless do not warrant relief. See, e.g.,

Dupree v. Hiraga, 121 Hawaiʻi 297, 320 n.28, 219 P.3d 1084, 1107 n.28 (2009) ("FOF No. 13, which states that McComber testified that he 'ha[d] not seen Mr. Kahoʻohalahala on Lanaʻi,' is therefore clearly erroneous. However, we find the error was harmless. . . ."); Kahawaiolaa v. United Airlines, Inc., No. 30580, 2012 WL 54497 *2 (Haw. App. Jan. 9, 2012) (SDO) ("Regardless of whether LIRAB's FOFs 14 and 15 are clearly erroneous, any error was harmless."). Here, the Family Court's descriptive error was not significant as the court consistently used the correct $55,000 purchase price for a vehicle that was new to Wife, and it is clear that it was the extended lease of a BMW, along with the purchase of the $55,000 Mercedez Benz, in light of Wife's other excessive spending and the significant decline of the parties' income due to the developments with the Alaska real estate and MSIM, that was the gravamen of the Family Court's finding of wasting of assets. The court's considerations were previously detailed in its December 23, 2016 Order Granting in Part and Denying in Part [Wife's] Motion and Affidavit for Pre-Decree Relief, where it identified its concerns about Wife's vehicle expenditures, as well as her spending of tens of thousands of dollars on jewelry, furniture, travel expenses, personal development and other items, while claiming that she does not have any money and cannot pay her utility bills. We cannot conclude that the Family Court erred or abused its discretion in charging Wife $55,000 for wasting of marital assets.

Wife further submits that, even if she was chargeable for wasting assets, the Family Court erred in also including the Mercedes Benz on the PDC at its date of the conclusion of the evidentiary part of the trial (**DOCOEPOT**) value of $34,000. First, the record shows that both parties agreed that the DOCOEPOT value of the vehicle was $34,000. The Mercedes was allocated to Wife, as presumably Wife kept the vehicle. The charge to Wife for the wasting of assets during the pendency of the divorce is a separate issue, although a charge is reflected as an asset on the property equalization chart. We cannot conclude that the Family Court erred or abused its discretion in allocating the Mercedes Benz to Wife at the value agreed-upon by the parties.

Wife further argues that the Family Court erred by failing to find that Husband wasted assets through his disposition of $81,683 worth of equipment and furniture from his Alaska practice with MSIM. In the Trial Order, the Family Court found that "[t]here was no credible evidence that [Husband] wasted any assets during separation. To the contrary, any and all expenditures of [Husband] were appropriate and within reason." Previously, the Family Court had found, after discussing expenditures, that "[Husband] is credible." The Family Court also made multiple findings related to Husband's expenses in winding down the MSIM business after it stopped being profitable. Evidence presented at trial included Husband's efforts in attempting to sell and/or barter MSIM assets following the closure of MSIM.

Upon review, we conclude that the Family Court's determination that Husband had not committed waste was supported by substantial evidence. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

(3) Wife argues that the Family Court erred and abused its discretion in failing to find that the Diamond Ring was a gift from Husband and thereafter including it as an asset on the PDC. The Trial Order included the following FOFs:

> 41. The parties disagree on whether the diamond ring, which [Wife] upgraded, was a gift to [Wife].
> 42. Whether [Wife's] diamond ring was a gift or not, Category 5 property includes all property owned by one or both spouses at trial.
> 43. [Wife's] diamond ring is worth $52,726 and it would be just and equitable that it be awarded to her.

The parties do not dispute the value of the Diamond Ring and therefore it will not be disturbed on appeal. However, the parties further agree that the portion of the Family Court's 2017 FOF 42 providing "[w]hether [Wife's] diamond ring was a gift or not Category 5 property includes all property owned by one or both spouses at trial" erroneously misstates the law. Husband argues that "the error is harmless because there is substantial and credible evidence that Husband never gave Wife the Diamond Ring worth $52,725, [sic] and the award of the ring to Wife is properly reflected on the court's [PDC]." Wife submits that she acquired the Diamond Ring through a series of "upgrades" from the original engagement ring Husband gave her, which it appears that she no longer has. Husband's testimony was clear that he did not see the Diamond Ring as a "direct descendent" of the ring he once gave Wife, i.e., the Diamond Ring was not a gift.

In Hawai'i, "the partnership model [is] the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings." Kakinami v. Kakinami, 127 Hawai'i 126, 137, 276 P.3d 695, 706 (2012).

> The partnership model distinguishes between marital partnership property that is brought into the marriage and marital partnership property that is acquired during the marriage. Accordingly, Hawai'i courts assign values to marital partnership property using five categories designed to assist courts in determining the equitable division and distribution of property between spouses:
> Category 1 includes the net market value of property separately owned by a spouse on the date of marriage;
> Category 2 includes the increase in the net market value of Category 1 property during the marriage;
> Category 3 includes the net market value of property separately acquired by gift or inheritance during the marriage;
> Category 4 includes the increase in the net market value of Category 3 property during the marriage; and
> Category 5 includes the net market value of the remaining marital estate at the conclusion of the evidentiary part of the trial.
> Each partner's individual contributions to the marriage, i.e., the values of Category 1 and Category 3, are to be repaid to the contributing spouse absent equitable considerations justifying a deviation. Absent equitable considerations justifying a different result, the increase in the value of each partner's individual contributions to the marriage, i.e., the values of Category 2 and Category 4, are divided equally between the parties. The value of Category 5, which is the net profit or loss of the marital partnership after deducting the other four categories, is to be divided equally unless equitable considerations merit deviation.

Gordon, 135 Hawai'i at 349-50, 350 P.3d at 1017-18 (citations and footnotes omitted). Stated differently:

> The NMVs in Categories 1 and 3 are the parties' capital contributions to the marital partnership. The NMVs in Categories 2 and 4 are the during-the-marriage increase in the NMVs of the Categories 1 and 3 properties owned at DOCOEPOT. Category 5 is the DOCOEPOT NMV in excess of the Categories 1, 2, 3, and 4 NMVs. In other words, Category 5 is the net profit or loss of the marital partnership after, deducting the partners' capital contributions and the during-the-marriage increase in the NMV of property that was a capital contribution to the partnership and is still owned at DOCOEPOT.

Tougas v. Tougas, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994) (quoting Gardner v. Gardner, 8 Haw. App. 461, 467, 810 P.2d 239, 240 (1991)).

Although the Family Court could have otherwise properly found that the Diamond Ring was Category 5 property (or that it was not), the Family Court erred in finding that the ring was Category 5 property regardless of whether it was a gift. Upon remand, the Family Court must make a determination as to whether the Diamond Ring was a gift in order to determine whether it is marital partnership property.

(4) Wife contends that the Family Court erred and abused its discretion in determining Husband's income. Wife submits that based on Husband's earnings history, combined with Husband's reported current earnings, Husband's reports "were not and are not credible."

The Family Court found:

> 12. Although [Husband] is quite capable of earning much more, [Husband] currently earns an average of $15,423 gross each month.
> 13. Husband receives some residual income from his prior business. [Husband] derives the majority of his income as an employee of Global Immunotherapy, LLC.

The Family Court additionally found, in 2017 FOFs 9-11, that Husband at one time had "a lucrative medical practice in Alaska" before a number of negative business factors caused a substantial decrease in that Alaska practice's prospects and it was eventually closed. The court ruled that "[e]vidence presented by [Husband] regarding his income is credible."

Husband's testimony at trial included details of his current practice and the earnings that it generates, and the

Family Court took multiple opportunities to directly inquire of Husband for specifics. Although the parties had once enjoyed significant income from Husband's MSIM practice, the record includes substantial evidence of a decrease in earnings from Husband's medical work to support the Family Court's finding that Husband's income was $15,423.00. Wife's reliance on the parties' historic earnings and argument that Husband now does with Global Immunotherapy the "same or substantially similar" work that he once did with MSIM, does not establish that the Family Court erred in its finding of Husband's current income when there was substantial evidence that Husband's prospects had adversely changed as a result of such external factors as, for example, the reduced insurance reimbursements paid for Husband's services. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence," and the Family Court had "substantial evidence" for its factual finding here with respect to Husband's income. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360 (citation omitted).

We conclude that the Family Court did not err in its determination of Husband's income.

(5) Wife further argues that the Family Court erred and abused its discretion in awarding spousal support of $2,600.00 per month for a period of two years, through October of 2018, because, inter alia, that amount and duration of support will result in "unconscionably disparate" standards of living between Husband and Wife "even after Wife has made as much progress towards becoming employed full-time as possible."

17

HRS § 580-47(a) provides, in relevant part:

> **§ 580-47  Support orders; division of property.** (a)
> . . . .In addition to any other relevant factors considered,
> the court, in ordering spousal support and maintenance,
> shall consider the following factors:
>
> (1)   Financal resources of the parties;
> (2)   Ability of the party seeking support and maintenance
>       to meet his or her needs independently;
> (3)   Duration of the marriage;
> (4)   Standard of living established during the marriage;
> (5)   Age of the parties;
> (6)   Physical and emotional condition of the parties;
> (7)   Usual occupation of the parties during the marriage;
> (8)   Vocational skills and employability of the party
>       seeking support and maintenance;
> (9)   Needs of the parties;
> (10)  Custodial and child support responsibilities;
> (11)  Ability of the party from whom support and maintenance
>       is sought to meet his or her own needs while meeting
>       the needs of the party seeking support and
>       maintenance;
> (12)  Other factors which measure the financial condition in
>       which the parties will be left as the result of the
>       action under which the determination of maintenance is
>       made; and
> (13)  Probable duration of the need of the party seeking
>       support and maintenance.

This court has previously identified several factual questions that the Family Court must consider in calculating spousal support:

> The first relevant circumstance is the payee's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is the payor's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

Wong v. Wong, 87 Hawai'i 475, 485, 960 P.2d 145, 155 (App. 1998) (citation omitted).

Here, the Family Court expressly indicated that it "reviewed and considered all of the factors in HRS §58[0]-47."

The court specifically noted the length of the marriage and the parties' employment capacity. The Family Court made multiple findings regarding the parties' joint financial history and current prospects; foremost among these findings was the court's determination – while recognizing several years of high earnings and standard of living – that the parties' standard of living was substantially decreased as a result of the bad investment in the Alaska office building and the declining business fortunes of MSIM. The court also specifically considered Wife's age, health, education, previous employment, and time commitments to the Minor Children, as well as noting Wife's own resources, the amount Husband had already paid her, and the amount that Wife could expect in the equalization payment.

We conclude that the Family Court's findings were supported by substantial evidence and that the Family Court applied the applicable law. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360; HRS § 580-47(a). We find no error or abuse of discretion in the Family Court's award of $2,600.00 per month in spousal support through October of 2018.

(6) Wife contends that the Family Court erred by failing to include her credit card debt on the PDC. Husband submits that the parties' credit card balances were "essentially zero" when they separated and that he had no balance at trial because he paid his post-separation charges monthly, whereas Wife accumulated a balance of approximately $63,000 by not regularly paying off her post-separation charges. The record includes findings that Wife spent "tens of thousands of dollars on

jewelry, furniture, travel expenses, personal development, and other items," paid unnecessary child care expenses, misstated her holdings, and that "[Wife] has continued to unreasonably spend." The court found Wife not to be credible and Husband to be credible. The record also reflects that Husband provided Wife more than $200,000.00 in financial assistance during the separation. The Family Court determined that it would be "just and equitable" that any post-separation credit card debt should be the sole responsibility of the party incurring that debt, and that such debt would not be included in the court's PDC.

Here, with substantial evidence of Wife's spending and accumulating separate credit card debt during the divorce, when Husband was financially assisting Wife while avoiding accumulating his own credit card debt, there was substantial evidence to support the Family Court's determination that it was just and reasonable not to include Wife's separately-incurred credit card debt on the PDC. Therefore, we conclude that the Family Court did not err or abuse its discretion in this regard.

(7) Wife contends that the Family Court erred and abused its discretion by attributing to Husband and equalizing a $100,000 Debt to Husband's mother. Wife challenges the court's finding of a debt owed by Husband to his mother, arguing that "[o]ther than Husband's own self-serving Asset and Debt statements," no evidence was presented at the divorce trial corroborating this debt, and thus, there was no basis for the Family Court's finding.

The Family Court's inclusion of this debt was based on FOFs in the Trial Order, including FOFs that referenced and incorporated findings from an earlier, December of 2016 evidentiary hearing in which Husband testified about why he needed to borrow the money and how he spent the proceeds. We conclude that the Family Court's findings were supported by substantial evidence in the record and its decision regarding the debt to Husband's mother is supported by the findings.

For these reasons, and to the extent set forth above, the Family Court's May 15, 2018 Decree, as modified by the February 8, 2018 Reconsideration Order and the May 15, 2018 Order Correcting Math is affirmed in part and vacated in part. This case is remanded to the Family Court for further proceedings consistent with our rulings with respect to any valid and relevant considerations justifying deviation from an equal property distribution and the proper categorization of the Diamond Ring.

DATED: Honolulu, Hawaiʻi, November 29, 2019.

On the briefs:

Andrea Alden,
for Defendant-Appellant,
 Cross-Appellee.

Michael S. Zola,
for Plaintiff-Appellee,
 Cross-Appellant.

Presiding Judge

Associate Judge

Associate Judge